(No. 75-CV-141—

ANDREA MILLER, on behalf of BURTON M. MILLER, Deceased, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed May 28, 1975.*

DAVID M. MEISTER, Attorney for Claimant.

WILLIAM J. SCOTT, Attorney General, for Respondent.

PER CURIAM.

This claim arises out of a criminal offense that occurred on March 23, 1974, at 2201 West Howard Street, Chicago, Illinois. Andrea Miller, wife of the deceased victim, seeks payment of compensation pursuant to the provisions of the "Crime Victims Compensation Act, *Ill. Rev. Stat., 1973, Ch. 70, §71, et. seq.* (hereafter referred to as the "Act").

This Court has carefully considered the application for benefits submitted on the form prescribed and furnished by the Court; and a report of the Attorney General of the State of Illinois which substantiates matters set forth in the application. Based upon these documents and other evidence submitted before the Court, the Court finds:

1. That the claimant's deceased husband, Burton M. Miller, age 33, was a victim of a violent crime, as defined in §2(c) of the Act, to wit:

"Murder", (*Ill. Rev. Stat., 1973, Ch. 38, §9-1*).

2. That on March 23, 1974, the claimant's husband was shot by an unidentified assailant or assailants during the course of a robbery of the Kwik Kleen Kar Wash shortly before the victim was to open the car wash.

3. That there is no evidence of any provocation by the decedent for the attack upon him.

4. That the victim died on March 23, 1974, as a result of the wound he received in the shooting six hours earlier. A further and more detailed summary of the facts and information considered by the court is contained in the Investigatory Report prepared by the Attorney General. A copy of said report is retained in the Court's file in this matter, and the facts as reported therein are incorporated in this opinion by reference.

5. That no suspects have been identified in connection with this crime as of this date, and the police investigation is ongoing.

6. That there is no evidence whatsoever that the victim and his assailants were related or shared the same household.

7. That the criminal offense was promptly reported

to law enforcement officials, and claimant has fully co-operated with their requests for assistance.

8. That the claimant seeks compensation under the Act for loss of support to herself and her daughter, Tracy Miller, age 15. A second child Timothy is living with foster parents and was not supported by the victim at the time of his death.

9. That at the time of Burton M. Miller's death, he was 33 years old and had a life expectancy to age 71 according to *Vital Statistics of the U.S. 1970*, U.S. Department of Health, Education and Welfare Public Health Service mortality table for the U.S. population. Therefore, we must conclude that the decedent's family has lost his financial support for the remainder of his normal life expectancy, computed to be 38 years.

10. That the victim's average monthly earnings for the 6 months immediately preceding his death were $1,522.75 but earnings of only $500 per month can be considered as the basis for determining loss of support, pursuant to the following provision in §4 of the Act:

" . . . loss of support shall be determined on the basis of the victim's average monthly earnings for the 6 months immediately preceding the date of the injury or on $500 per month, whichever is less."

11. That, based on the victim's normal life expectancy of 38 years, and taking $500 per month as his average earnings, the loss of support of his family is computed to be an amount far in exess of the $10,000.00 maximum amount that can be awarded as compensation under the Act for any loss resulting from a violent crime.

12. That, in addition to loss of support, the claimant incurred medical and funeral expenses for the victim and the gross amount of the pecuniary loss for these items is as follows:

Medical Expense
St. Francis Hospital ............................... $ 247.00

Funeral Expenses
Memorial Park Cemetery
(evergreen covering and Maintenance) .................. $ 72.75

Monument, Leve Monument
Chicago, Illinois .................................... $ 348.25

Rabbi Singer (ceremony) ........................... $ 125.00

Funeral Home
Weinsten Brothers Funeral Home ..................... $2,564.60

TOTAL FUNERAL EXPENSE ....................... $3,110.60

The Court has determined that, pursuant to the "Crime Victims Compensation Act," an amount of $2,500.00 would be reasonable compensation for the funeral expenses.

COMPENSABLE FUNERAL EXPENSE ............... $2,500.00
MEDICAL EXPENSE ............................. $ 247.00

TOTAL MEDICAL AND FUNERAL EXPENSE .......... $2,747.00

13.   That, in determining the amount of compensation to which an applicant is entitled, §7(d) of the Act states that this Court—

"(d) shall deduct $200 plus the amount of benefits, payments or awards, payable under the Workmen's Compensation Act,' or from local governmental, State or Federal Funds or from any other source, (except annuities, pensions plans, Federal social security benefits, and the net proceeds of the first ($25,000) Twenty-five Thousand Dollars of life insurance that would inure to the benefits of the applicant . . .)."

We interpret the above provision to mean that the benefits received by the victim's family as a result of his death, and deduction of $200, shall be deducted from the total loss sustained and not from the $10,000 maximum amount payable under the Act. On this point, we are following an opinion of the Masachusetts Supreme Court on the same point arising under the provisions of an Act identical to ours in all material respects: *Gurley* v. *Commonwealth (1973) 296 N.E. 2d 477.*

14. That, in the claim before us, the benefits received by the claimant, as contemplated by §7(d) of the Act, were shown to be in the total sum of $125,573.00. This amount minus the $25,000 nondeductible life insurance allowance, plus the statutory deduction of $200 having been deducted from the gross amount of loss shown in §11 and §12, leaves the amount of actual loss sustained by the claimant and her daughter far in excess of the $10,000 maximum amount that can be awarded under the Act for any loss resulting from a violent crime. Hence, the claimant and her daughter are entitled to an award in the maximum amount payable under the Act, $10,000.

The Court takes notice of the fact that the child of the deceased victim, named in §8 of this opinion, was also dependent on Burton M. Miller, as was his surviving spouse, Andrea Miller, the claimant, and the mother of decedent's said daughter.

Under these circumstances the court is required to interpret and comply with the following language of the Act found in §8(b):

"(b) If the Court of Claims finds, in the case of an application made by a person dependent for (her) support on a deceased victim, that persons other than the applicant were also dependent on that victim for their support, it (the court) shall also (1) name those persons in its order; (2) state the percentage share of the total compensation award and the dollar amount to which each is entitled, and (3) order that those amounts be paid to those persons directly or, in the case of a minor incompetent, to his (her) guardian or conservator, as the case may be."

To comply strictly with the above legislative directive, it would seem appropriate and reasonable to order the distribution of the $10,000 award in accordance with the rule of distribution stated in *§11(1) of the Probate Act.* This rule would allow one-third ($3,333.33) to the victim's surviving spouse, and the remaining two-thirds ($6,666.66) to the victim's daughter. This would create

an estate in the amount of $6,666.66 for Tracy Miller, age 15.

However, to make distribution in this manner, we believe would impose an undue hardship on the mother. If the $10,000 award were paid to her in a lump sum, she would be holding $6,666.66 in trust for her daughter. Although she is guardian of her person, she would have no power to administer her estate nor use her funds unless she is duly appointed guardian of the minor's estate as provided by law. *Perry* v. *Carmichael* (1880) *95 Ill. 519.* After such appointment, she would be required to manage her daughter's funds frugally under the direction of the appointing court and present periodic of her guardianship to such Court. She would also be responsible for Court costs and for any legal expenses required in filing her petition for appointment, oath, surety bond and accounts.

To obviate the necessity of the claimant being appointed guardian of her daughter's estate, and considering all other facts in this case, the court believes that the best interest of the victim's family would be served by our ordering that this award be disbursed to the claimant in periodic monthly payments as authorized in §8(a)(4) of the Act. As the natural guardian of her daughter, the mother has a legal obligation to provide for her suitable support and education. In fulfilling this obligation we believe she would necessarily be required to expend the proper amount from each monthly payment received hereunder for the care and nature of her daughter as well as for her own necessities.

It Is Hereby Ordered that the total sum of $10,000.00 be awarded to the claimant and her daughter, collectively, as persons who were both dependent for their support on Burton M. Miller, the deceased victim of a violent crime.

IT IS FURTHER ORDERED that the aforesaid be paid to the claimant, Andrea Miller, as a lump sum of $2,747.00, and $500 per month for 14 months thereafter, and $253.00 in the fifteenth month. The Court directs that said monthly payments shall be made from the Court of Claims Fund insofar as it is legally possible to do so.